**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **MARY HOLLAND,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. H-04-2296** |
| | § | |
| **JO ANNE B. BARNHART, Commissioner of the Social Security Administration,** | § | |
| | § | |
| **Defendant.** | § | |

**MEMORANDUM & ORDER**

Pending before the Court are Plaintiff's Motion for Summary Judgment, (Dkt. #11), and Defendant Jo Anne B. Barnhart, Commissioner of the Social Security Administration's ("Commissioner"), Motion for Summary Judgment (Dkt. #8). After consideration of the motions, the entire record, and the applicable law, the Court is of the opinion that Holland's motion for summary judgment should be DENIED, and the Commissioner's motion should be GRANTED.

**Factual and Procedural Background**

The Plaintiff, Mary Holland ("Holland"), filed this action pursuant to 42 U.S.C. § 405(g) and for judicial review of an unfavorable decision by the Commissioner regarding her claim for disability insurance and widow's insurance benefits under Title II of the Social Security Act ("the Act"), and for supplemental security income ("SSI") under Title XVI of the Act.

Holland was born on December 26, 1942, and was 59 years old on the date of her hearing before the Administrative Law Judge ("ALJ").[1] She is a high school drop-out. Holland claims that

[1] ALJ finds Holland is 59 years old at the hearing, however, in his written findings, states she was born Oct. 25, 1938. (Tr. at 27). Plaintiff states she was born December 26, 1942, which makes her 59 at the time of the hearing. (Dkt. #12, 3; Tr. at 783).

she has been unable to work since April 1, 1993. Prior to the onset date of her alleged disability, Holland was employed as a counter server and cashier in the food services/hotel industry.

Holland first filed an application for disability benefits, widow's insurance benefits, and SSI, on May 21, 1996, alleging an inability to work beginning April 1, 1993, due to arthritis, back pain, general weakness, effects of her medication, and carpal tunnel in her right hand. At a hearing held on June 8, 1998, before ALJ Paul Schwartz, Holland testified and was represented by counsel. The ALJ subsequently denied all benefits.

Holland appealed this decision, and the Appeals Council remanded the case to the ALJ Paul Schwartz for further explanation of his rationale, and specific discussion of medical findings and functional limitations. (Tr. at 124). Pursuant to the remand, the ALJ held another hearing on January 30, 2002.[2] Holland testified at the hearing and was represented by counsel. Medical experts Drs. Charles Murphy and Nancy Tarrand testified, as well as vocational expert Charles Poor.

At the hearing, Holland described her prior work experience, her back, leg, and carpal tunnel problems, and her present lifestyle. Holland lives with a cousin and has a 19 year old foster child, in addition to three grown children of her own. Specifically, Holland complained of leg pain, an "enlarged heart," lack of balance, side effects from medication, a faulty bladder, and testified she has difficulty grasping items with her right hand. Holland testified she has sought treatment for depression.

After reviewing the file and listening to the testimony, Dr. Murphy, the first medical expert, testified regarding Holland's medical condition. Murphy stated that Holland suffers from non-insulin

---

[2] ALJ Paul Schwartz held a total of three hearings, but his decision was based only on the testimony presented at the third, as well as the entire record. At the first hearing, no one testified. At the second, although Drs. Tarrand and Murphy testified, the transcript is not included because Dr. Murphy had not fully reviewed the record. (Dkt. #12, 7).

dependent diabetes, mild sensory neuropathy, and some urinary incontinence. Murphy testified Holland also suffers from lower back pain and has mild degenerative change, but there is no evidence of radiculopathy. Murphy also testified Holland was clinically diagnosed with degenerative joint disease, but no x-rays were taken, and she has no significant loss of motion. In addition, although she complains of tingling and has difficulty holding things, Holland had surgery on her right hand for carpal tunnel, and exams show normal motor strength. In Murphy's opinion, her impairments do not equal or meet any relevant listings (1.03, 1.05, 9.08 or 11.14), and she has light residual functioning capacity ("RFC") with a need for access to a bathroom, and a reduced amount of stooping.

The second medical expert, Dr. Tarrand, after reviewing the files, testified regarding Holland's mental status. Tarrand opined Holland met or equaled the A section, but not the B section of the relevant listing 12.04. She testified Holland has mostly mild restrictions, moderate difficulties with social functioning, and a depressive disorder with major depression symptoms. Based on a consultative exam from 1997, Tarrand testified there is evidence Holland was becoming more isolated, and that she had moderate difficulty concentrating, but there were no episodes of deterioration or decompensation. In Tarrand's opinion, Holland has few limitations on functioning at work: moderate limitation on dealing with the public and maintaining attention or concentration, as well as dealing with work stress, but otherwise only mild or no limitations. Tarrand sees no evidence of post-traumatic stress syndrome from the record. She also does not believe the Global Assessment of Functioning ("GAF"), conducted by a Dr. Pham, is a useful test, because an out of work patient automatically drops to a score of 50.

Following Tarrand, vocational expert Poor testified regarding Holland's past relevant work and potential for future employment. Poor characterized Holland's past work experience in positions as hotel restaurant supervisor as light in exertion and semi-skilled. The ALJ presented Poor with a

hypothetical of an individual with Holland's like abilities and limitations, a light exertion level, and a requirement to have access to a bathroom at will. Poor opined that the individual would be able to perform as cashier, and as counter person, server, and clerk. Poor opined that Holland's skills would transfer to any number of jobs under the "clerical and sales" classification, for example, to information clerk, customer service representative, and receptionist.

The ALJ subsequently denied Holland's request for disability insurance, widow's insurance benefits, and SSI, in his decision March 22, 2002. Holland then sought timely review with the Appeals Council. That request was denied on May 20, 2004, and she appealed to this Court. The Commissioner and Holland filed their motions for summary judgment on January 11, 2005, and February 3, 2005, respectively.

**Standard of Review and Applicable Law**

The Court's review of the Commissioner's final decision to deny disability benefits is limited to two issues: 1) whether substantial record evidence supports the decision; and 2) whether proper legal standards were used to evaluate the evidence. *See Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002) (citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)); *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999) (quoting *McQueen v. Apfel*, 168 F.3d 152, 157 n.2 (5th Cir. 1999)).

The widely accepted definition of "substantial evidence" is more than a mere scintilla, but less than a preponderance. *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Carey*, 230 F.3d at 135. In applying this standard, the court is to review the entire record, but the court may not reweigh the evidence, decide the issues de novo, or substitute the court's

judgment for the Commissioner's judgment. *Brown*, 192 F.3d at 496. Only if no credible evidentiary choices of medical findings exist to support the Commissioner's decision should the court overturn it. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

To claim entitlement to disability benefits, a claimant must show that he was disabled on or before the last day of his insured status. *Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir. 1979). The legal standard for determining disability under the Act is whether the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is capable of performing any "substantially gainful activity," the regulations provide that the Commissioner should evaluate disability claims according to the following sequential five-step process:

> (1) a claimant who is working, engaging in a substantially gainful activity, will not be found to be disabled no matter what the medical findings are;
>
> (2) a claimant will not be found to be disabled unless he has a "severe impairment;"
>
> (3) a claimant whose impairment meets or is equivalent to an impairment listed in [the Listings] will be considered disabled without the need to consider vocational factors;
>
> (4) a claimant who is capable of performing work he has done in the past must be found "not disabled;" and
>
> (5) if the claimant is unable to perform his previous work as a result of his impairment, then factors such as age, education, past work experience, and residual functioning capacity must be considered to determine whether he can do other work.

*Bowling v. Shalala,* 36 F.3d 431, 435 (5th Cir. 1994).

To be entitled to benefits, a claimant bears the burden of proving that she is unable to engage in substantial gainful activity within the meaning of the Act. *See Wren v. Sullivan*, 925 F.2d 123, 125

(5th Cir. 1991) (citing *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985)). By judicial practice, this translates into the claimant bearing the burden of proof on the first four of the above steps and the Commissioner bearing it on the fifth. *See Brown*, 192 F.3d at 498; *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987)). The analysis stops at any point in the five step process upon a finding that the claimant is or is not disabled. *See Greenspan*, 38 F.3d at 236.

**Discussion**

In this case, the ALJ found that Holland had not engaged in substantial gainful activity since the alleged onset date and that Holland suffers from diabetes mellitus, neurogenic bladder, carpal tunnel syndrome, hypertension, osteoarthritis, bulging lumbar disc, and a mood disorder. The ALJ finds that the impairments, singly or in combination, do not equal the relevant listings contained in the listing of impairments in Appendix 1 of the Regulations No. 4. Federal regulations provide that a claimant's RFC is the measurement of her greatest capability to do work despite any limitations. *See* 20 C.F.R. §§ 404.1545, 416.945. At step four, the ALJ found that Holland has the RFC to perform light work in which she has access to a bathroom. In addition, ALJ found that:

> There is no evidence that the claimant has any limitation on her abilities to follow work rules or use judgment. [She] has mild limitations on her abilities to relate to co-workers, interact with supervisors, function independently, and to demonstrate reliability. [She] has only moderate limitations on her abilities to deal with the public, maintain attention and concentration, and to deal with work stress. [She] has a moderate limitation on her ability to understand, remember, and carry out complex job instructions. She has a mild limitation on her ability to understand, remember, and carry out detailed but not complex job instructions. There was no evidence of a limitation on her ability to understand, remember, or carry out simple job instructions. [She] can perform one and two step operations, respond appropriately to supervision and co-workers, perform routine repetitive tasks, and function in a low stress work setting where public contact is minimal. (Tr. at 28).

After determining Holland's RFC, the ALJ concluded that in addition to being able to perform her past relevant work as a counter server and cashier, Holland could also perform a significant range of light

work including occupations as information clerk, customer service representative, and receptionist. Thereafter, the ALJ determined, based in part on the vocational expert's testimony, that there were jobs in the "many thousands" in the regional and national economies that Holland could perform. (Tr. at 28).

Holland requests judicial review of the ALJ's decision to deny benefits. Holland contends that the ALJ's decision is based on insufficient evidence and was reached by applying improper legal standards. First, Holland argues that the ALJ improperly disregarded treating physician opinions, specifically regarding claimant's alleged peripheral neuropathy. Second, Holland asserts that the ALJ improperly relied on Tarrand's testimony to find that Holland "did not have a history of mental health treatment." (Tr. at 20). Third, Holland contends that the ALJ erred in finding that Holland could perform past relevant work. The Court concludes that the ALJ did not disregard clinical physician's opinions, and that the vocational expert's testimony and the ALJ's decision was supported by substantial evidence in the record.

The ALJ did not err when he relied upon Murphy's expert testimony more than the treating physicians's reports. The ALJ did not give the treating physicians's opinions controlling weight because their findings were inconsistent with the medical evidence as a whole. (Tr. at 25).[3] Their clinical findings were unsupported by MRIs, EMGs, and other physicians's findings. (Tr. at 25). The ALJ assessed the opinions according to the factors set forth in 20 C.F.R. §§ 404.1527, 416, 927, and

---

[3] Holland asserts the ALJ should have obtained supplemental information if the factual record was inadequate. *See* 20 C.F.R. §§ 404.1512(e), 416.912(e). In this case, however, the record was adequate; the ALJ simply found the treating physicians's opinions were unsubstantiated by the objective medical evidence. As the Fifth Circuit has noted, no duty to investigate further arises unless the existing evidentiary record raises a reasonable suspicion of a potentially disabling impairment that has not been fully evaluated. *Jones v. Bowen*, 829 F.2d 524, 526 (5th Cir. 1987).

found their severity was not supported by the record. Specifically, the ALJ included evidence that indicates claimant's peripheral neuropathy is not as bad as her complaint. For example, claimant's motor strength has been maintained, even though she complains of pain, (Tr. at 20), and her EMG and nerve conduction studies were negative (Tr. at 19). Thus, because the ALJ took into account the treating physicians's opinions, looked at the whole record, and weighed the evidence, this Court holds that the ALJ's conclusion was based on substantial evidence contained in the record.

The ALJ did not err in relying on Tarrand's testimony. Although Tarrand testified that Holland did not have a detailed history of mental health treatment, she did still testify that Holland suffers from depression with symptoms of major depression. Holland argues specifically that the ALJ failed to acknowledge that Holland suffers from post-traumatic stress syndrome. This diagnosis stems from Dr. William Fleming's report in which he opined that Holland should seek psychiatric help, but did not evaluate her himself. (Tr. at 824). Holland was subsequently diagnosed, by psychiatrists, with depression, not post-traumatic stress syndrome; therefore, the ALJ properly discounted Fleming's report. The Court holds the ALJ properly evaluated Tarrand's testimony.

Finally, Holland argues that the ALJ erred in his decision, in part based on the vocational expert's testimony, that Holland could perform her past relevant work. The ALJ's decision is supported by the fully developed record and takes into account the factors required by Social Security Ruling 82-62. Objective medical evidence shows that although Holland complained of difficulty holding and grasping objects with her hands, Holland still has normal motor strength, no wasting of her hands, and good grip strength. The EMG and nerve conduction studies were negative, and she has only mild peripheral neuropathy. The ALJ made explicit findings, based in part on Poor's testimony, as well as the record, as to the mental demands Holland can sustain and which relate to light work. The ALJ listed Holland's skills obtained in her past relevant work experience and that would be

transferrable within the category "clerical and sales" as dubbed by the Department of Labor. (Tr. at 28). Therefore, the Court finds that the ALJ properly evaluated Holland's ability to perform past relevant work and found her not disabled at step four. As such, the Court concludes the decision of the Commissioner must be affirmed.

**CONCLUSION**

For the foregoing reasons, the Commissioner's motion for summary judgment is GRANTED, and Holland's motion is DENIED. The Court shall enter a final judgment on even date herewith.

Signed this 19th day of July, 2005.

JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE